Kimberley Hanks McGair, OSB #984205
kmcgair@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Attorneys for PacifiCorp

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PACIFICORP, an Oregon corporation, | Case No._____ |
| Plaintiff, | COMPLAINT |
| v. | Breach of Contract |
| PIKE ELECTRIC, LLC, a North Carolina limited liability company, | |
| Defendant. | |

Plaintiff PacifiCorp alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

Defendant Pike Electric, LLC is a North Carolina limited liability company with its principal place of business in Mount Airy, North Carolina. Pike Electric, LLC is the successor to Pike Engineering, Inc.

2.

PacifiCorp is an Oregon corporation and a regulated public utility with its principal place of business in Portland, Oregon.

Page 1 -    COMPLAINT

3.

On or about November 14, 2008, PacifiCorp and Defendant entered into a Contract for Engineering Services (the "Contract") relating to engineering and bid consulting for the construction of a transmission line to be built in Utah. A true and correct copy of the Contract with relevant exhibits is attached hereto as Exhibit A.

4.

This action arises from Defendant's breaches of the Contract, including its negligent omission of the correct lattice tower drawings from the bid package that it prepared for the project; its incorrect load calculations for H-Frame structures; and its inaccurate and incomplete engineering of access roads, all of which were Defendant's responsibility to incorporate into the final construction specifications. These breaches resulted in damage to PacifiCorp in excess of $4 million, including amounts PacifiCorp spent to settle claims with its General Contractor, EC Source, relating to Defendant's breaches and attorneys fees and costs PacifiCorp incurred in that dispute, for which Defendant owes PacifiCorp indemnity obligations.

5.

This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) and venue is proper before this Court pursuant to 28 U.S.C. §1391(b)(1).

6.

Article 47 of the Contract states: "Any litigation between the Parties arising out of or relating to this Contract will be conducted exclusively in federal or state courts in the State of Oregon . . ." Therefore, Defendant specifically consented to this Court's jurisdiction and to venue in this Court.

**GENERAL ALLEGATIONS**

7.

Between 2008 and 2015, PacifiCorp planned and constructed a new 345 kV single

circuit transmission line between a substation located in Sevier County, Utah, known as the Sigurd Substation, to a substation located in Washington County, Utah, known as the Red Butte Substation. This transmission line will be referred to in the Complaint as the "Sigurd to Red Butte Transmission Line" or the "Line."

8.

The Sigurd to Red Butte Transmission Line is approximately 170 miles long and consists of 124 lattice steel towers and 667 H-frame steel towers between 80 to 140 feet high and spaced between 800 and 1200 feet apart. The Line has the capacity to supply approximately 600 megawatts of electrical capacity to southwestern Utah.

**PacifiCorp – Pike Electric Services Contract**

9.

PacifiCorp contracted with Defendant to, among other things, develop the engineering, procurement, and construction specifications for the construction of the Line, and to prepare the plan of development required by the United States Department of the Interior, Bureau of Land Management ("BLM") and the United States Department of Agriculture Forest Service ("Forest Service") to obtain a right-of-way. Collectively the BLM and Forest Service are referred to herein as the "Agencies." Defendant acted as a "bid consultant" by preparing a bid package to deliver to contractors wishing to bid on construction of the Line and assisting PacifiCorp with awarding the Engineering, Procurement and Construction ("EPC") Contract.

10.

Article 16 of the Contract required Defendant to "perform the Work using the standards of care, skill, and diligence normally provided by a professional in the performance of similar Services."

11.

The scope of work relating to this portion of the project ("Scope of Work")

required, among other things, Defendant to provide engineering and design services to establish a constructible transmission line route including all aspects of access and construction support facilities, to support right-of-way acquisition activities, including preparing access road exhibits and the necessary exhibits for environmental permitting. To facilitate obtaining rights-of-way, Defendant was to obtain any ground surveys necessary for obtaining easements and rights-of-way necessary to construct the Line. On property for which Defendant did not have a right to enter, the Scope of Work required Defendant to coordinate scheduling a time to enter with PacifiCorp. Scope of Work at p. 10, ¶ 3.2.3.  The applicable Scope of Work is attached hereto as Exhibit B.

12.

The Scope of Work also required Defendant to "[p]rovide full and sufficient technical documentation required to develop the Engineering, Procurement and Construction Request for Proposal for the Project . . . include[ing] production of detailed scope of work, standards, construction specifications, reference drawings, performance specifications, survey data, geotechnical data, CAD standards, etc." Scope of Work at p. 11, ¶ 3.3.

13.

The Contract requires Defendant to indemnify PacifiCorp against "any and all claims, demands, suits, losses, costs and damages of every kind and description . . . brought by any third party resulting from or arising out of any negligence or wrongful acts" by Defendant. Contract at p. 9, Article 19. The Contract's limitation of liability explicitly does not extend to Defendant's indemnity obligations. Contract at p. 9, Art. 20.

**Lattice Tower Drawing Error**

14.

As part of preparing the technical documentation for the Request for Proposal, Defendant was responsible for document control and assembly of the technical scope of work,

including the lattice tower drawings. During the proposal period, when contractors were preparing bids for the EPC contract, the lattice tower designs were modified resulting in an increase in the amount of steel necessary to construct the lattice towers.

15.

Defendant was aware of the modifications to the designs, but failed to provide the revised design drawings as attachments to the final EPC specifications provided to the winning bidder, EC Source. As a result, EC Source's bid was based on an inaccurate amount of steel necessary to construct the lattice towers. When EC Source learned of the change in design and increased steel requirements, EC Source submitted a Change in Work to PacifiCorp for the increased amount of steel. Pursuant to its contract with EC Source, PacifiCorp was required to consent to the Change in Work. PacifiCorp's contract with EC Source permitted a 14% markup on increased materials required by owner-caused changes in work, which amounted to a significant increase in costs to PacifiCorp for the incorrect lattice tower design drawings.

**H-Frame Load Calculation Error**

16.

Defendant's design of the H-frame structure did not meet PacifiCorp's written standards and specifications for load requirements, nor did it meet National Electric Safety Code (NESC) loading requirements.

17.

EC Source discovered the error in Defendant's load calculation after PacifiCorp had awarded the bid to EC Source. EC Source's bid was based on Defendant's inaccurate load calculations. When the load calculation error was corrected, it resulted in additional steel requirements to construct the H-frame structures. As a result, EC Source submitted a Change in Work to PacifiCorp for the increased amount of steel it was required to procure to construct the H-frame structures, to which PacifiCorp was required to consent under its contract with EC

Page 5 -    COMPLAINT

Source. The 14% markup for the additional steel required as a result of Defendant's design error resulted in increased costs to PacifiCorp.

**Access Road Errors**

18.

Because portions of the Line were built on federal lands, PacifiCorp was required to comply with the National Environmental Policy Act ("NEPA"), including developing an Environmental Impact Statement ("EIS") detailing an analysis of potential environmental impacts and a proposed range of reasonable alternatives for the project. PacifiCorp was required to obtain right-of-way grants from the BLM and Forest Service based on the findings of the NEPA process.

19.

To obtain these right-of-way grants, PacifiCorp hired Defendant to prepare a Plan of Development ("POD") to submit to the BLM and Forest Service. The POD contained detailed maps of all access roads for construction and maintenance of the structures. The POD designated access roads according to the amount of work and reclamation that would need to be done on each segment.

20.

Defendant either did not conduct a technical field review or did so negligently, resulting in the roads being incorrectly categorized with regard to the level of disturbance needed for construction and maintenance. This caused a high number of variances to the POD to alter the access road designs which had to be approved by the Agencies. For example, many roads that were designated as constructible within the parameters of the classifications assigned by Defendant were impassable and required additional work to comply with environmental and practical considerations.

///

21.

As a result, EC Source requested at least 31 access road variances, undisputedly related to Defendant's negligent preparation of the POD. A substantial portion of the cost for the access road Changes in Work included re-engineering, field surveys, and correction of the access road plan mapping provided by Defendant.

22.

In 2014 and 2015, EC Source contacted PacifiCorp alleging "insufficient and defective preliminary engineering in the POD done by Pike Engineering," and demanding payment for changes in work that resulted from these deficiencies. As a result, in September 2014 and June 2015, PacifiCorp demanded that Defendant indemnify and defend it against EC Source's claims, as required under Article 19 of the Contract. PacifiCorp specifically demanded damages relating to field work by the contractor to review constructability, costs incurred to prepare, submit and obtain variances, environmental constraints for each road, remobilizations of crews, and other costs that were caused by Defendant's failure to properly classify the roads or conduct Defendant's work. Defendant refused to indemnify and defend PacifiCorp in its dispute with EC Source.

23.

Plaintiff ultimately settled with EC Source on its claims relating to the access road variances. This settlement included the costs of submitting variances to the federal agencies to comply with environmental permits, and the cost of unanticipated mobilization and demobilization while EC Source waited for variance approvals. PacifiCorp sustained damages in an amount to be proven at trial as a result of EC Source's claims arising from Defendant's negligent and faulty work associated with the POD and access roads.

///

///

## CLAIM FOR RELIEF
### Breach of Contract

24.

PacifiCorp realleges the foregoing paragraphs above, as if fully set forth herein.

25.

PacifiCorp and Defendant entered into a valid and enforceable Contract.

26.

PacifiCorp has performed all of its obligations under the Contract.

27.

The Defendant breached the Contract by, among other actions, refusing to indemnify Plaintiff for claims brought against it based on Defendant's negligent and wrongful acts; providing work that did not meet the standards of care, skill, and diligence normally provided by an engineering firm and bid consultant; and by failing to meet one or more requirements set forth in the Scope of Work.

28.

PacifiCorp has been damaged by Defendant's negligent and wrongful acts. Specifically, it was required to compensate its general contractor for Changes in Work for increased steel purchases and for revised access road designations. These Changes in Work included rework to and correction of the access road plan and increased steel quantities for both the lattice towers and H-Frame structures due to Defendant providing incorrect drawings and engineering calculations.

29.

PacifiCorp's general contractor, EC Source, made demands and threatened litigation against PacifiCorp based on the defective engineering provided by Defendant, which PacifiCorp settled, causing it damages.

///

30.

In addition to the cost of settling EC Source's claims, PacifiCorp incurred costs and attorneys' fees defending against EC Source's demands and negotiating a settlement with EC Source.

31.

Defendant's conduct, as described above, constituted a breach of the Contract.  As a result of Defendant's breach of the Contract, PacifiCorp has been damaged in an amount to be proven at trial, but not less than $4,150,000.

32.

Pursuant to the Contract, PacifiCorp is entitled to recover its attorneys fees and costs incurred herein from Defendant.

WHEREFORE, Plaintiff prays for a judgment against Defendant and in favor of Plaintiff as follows:

1. Damages in an amount to proven at trial, but no less than $4,150,000;

2. For all costs of suit incurred, including reasonable attorneys' fees; and

3. Such other relief as the court deems just and equitable.

DATED this 19th day of July, 2017.

FARLEIGH WADA WITT


By: /s/ Kimberley Hanks McGair
Kimberley Hanks McGair, OSB #984205
(503) 228-6044
kmcgair@fwwlaw.com
Attorneys for PacifiCorp